### ANTHONY v. HUNTER, Warden.
### No. 984 H. C.

District Court, D. Kansas,
First Division.

May 29, 1947.

Harry H. Dunn, of Hutchinson, Kan., and Howard F. McCue, of Topeka, Kan., for petitioner.

Randolph Carpenter, U. S. Atty., and James W. Wallace, Asst. U. S. Atty., both of Topeka, Kan. (Colonel William J. Hughes, Jr., JAGD, of Washington, D. C., on the brief), for respondent.

MELLOTT, District Judge.

Petitioner alleges that he is illegally held in custody and deprived of his liberty by the Warden of the United States Penitentiary at Leavenworth, Kansas. Respondent admits the custody, asserting that it is lawful and attaching to his return photostatic copies of (1) a General Court-Martial Order, 20 September 1945, committing petitioner to the United States Penitentiary at Lewisburg, Pennsylvania, for the term of his natural life; (2) a General Court-Martial Order dated 2 February, 1946, changing the place of confinement of petitioner to the United States Penitentiary at Leavenworth, Kansas; and (3) a letter of the Adjutant General, by order of the Secretary of War, remitting, by direction of the President, so much of the sentence to confinement as is in excess of thirty-five years. At the hearing the documents above referred to were introduced in evidence, as was also the record of a common trial of petitioner and Private E. J. Arnold by a general court-martial which convened at Jugesheim, Germany, 3 April 1945. In addition to the evidence so adduced petitioner and his wife testified. The major portion of the testimony before this court, however, was given by William L. Kline, formerly a Second Lieutenant in the 704th Tank Destroyer Battalion, United States Forces, European Theater. From the whole record [1] the court makes the following:

### Findings of Fact

1. Petitioner, a married man and the father of a son four years of age, is twenty-six years old (T. 14). He was inducted into the United States Army at St. Augustine, Texas, in December 1942. After several months training he was sent overseas, landing in France in July of 1944 as a private in the 704th Tank Destroyer Battalion, 4th Armored Division. He was in active combat from that time on, participating in the drive through France, the Battle of the Bulge and the invasion of the Rhineland (T. 15, 16).

2. On March 17, 1945, petitioner's company moved into the town of Langenlonsheim, Germany, out-posting the town. In the evening of that day petitioner and his co-defendant in the trial which was later held before a court-martial (Arnold) went into the town, ostensibly in search of another soldier, and entered a cellar in which some sixty odd Germans, mostly women and children, were quartered for protection from artillery fire (T. 17-18-197).

3. On the morning of March 18, 1945, petitioner and Arnold were informally accused of having raped some German women during the night and were taken before the German civilians, including the several who thereafter became the complaining witnesses, for identification. None of them at that time identified petitioner (T. 19, 20, 278). He and Arnold, however, were taken into custody and removed to Battalion Headquarters, some 15 or 20 miles to the

---

[1] The references shown in parentheses herein—e. g. (T. 100)— are to pages of the Transcript and hence do not co-incide with the pages in the record of trial by the General Court-Martial.

rear (T. 21, 82). Thereafter petitioner was confined to a supply truck, which moved forward with Headquarters (T. 21).

4. After petitioner and Arnold were taken into custody and on March 18, 1945, Second Lieutenant William L. Kline— who a few weeks earlier had been commissioned in the field (T. 56)—Adjutant of the Battalion, was appointed to investigate the accusations made against the prisoners (T. 43). He had had no previous experience in investigating serious charges; but upon his appointment, with an interpreter and a stenographer, he went to Langenlonsheim, Germany, where he interrogated several witnesses and made a record of their testimony (T. 43). During this investigation the accused were not present.

5. On or about March 21, 1945, Lieutenant Kline took the accused and other soldiers to Langenlonsheim where they were viewed by the witnesses. Most of them identified Arnold, "approximately half" of them "picked Anthony," "two or three were undecided and two or three picked another man," whom the investigating officer knew was not present (T. 44). Anthony had never worn a mustache (T. 54-29); but the witnesses who identified him stated that he "had a mustache" at the time of the alleged commission of the offense (T. 54-252-256).

6. Following the viewing of the accused, as referred to in the preceding finding, petitioner asked Lieutenant Kline "what he thought about it" to which he responded: "Well, according to the identification there couldn't be much to it" (T. 22). Lieutenant Kline reported the results of his investigation to his Commanding Officer, Lieutenant Colonel James W. Bidwell, after which he consulted with Lieutenant Colonel Chester D. Silvers, Judge Advocate for the Division. The latter, after examining the statements secured by Lieutenant Kline, indicated an opinion that the accused were guilty and that they should be made an example of for disciplinary purposes (T. 45).

7. At no time during the investigation heretofore referred to was petitioner given an opportunity to cross-examine the witnesses being interrogated by the investigating officer; but Lieutenant Kline informed him of the nature of the charges which were being considered (T. 46, 47). The accused were confronted with the witnesses, prior to the trial by the court-martial, only at the time of the viewing on March 21, 1945, prior to which the statements had been taken from the witnesses (T. 47-50-51). When the statements were taken only the investigating officer, the interpreter, the stenographer and the witness were present (T. 61).

8. After the statements were taken and the viewing occurred the army continued to move forward, progressing approximately 200 miles from Langenlonsheim within the next ten or twelve days. Petitioner moved forward with the Battalion (T. 61, 62). The trial before the court-martial hereinafter referred to took place at Jugesheim, Germany, approximately half-way between the front and Langenlonsheim where the alleged offenses occurred.

9. On March 29, 1945, Lieutenant Kline returned from the front to Division rear for consultation with the Judge Advocate for the Division (T. 73). The actual drawing up of the charges and specifications was done at that time with his help and the use of his stenographers (T. 74). The "Pretrial Investigating Officer's Report" (T. 190 to 193 inc.) was prepared by filling in blanks, designating the name of the accused and the witnesses, the body and principal part of the report being mimeographed. The "Charge Sheet" was similarly prepared (T. 194-196), Charge I being a violation of the 92nd Article of War, 10 U.S.C.A. § 1564—carnal knowledge of two German females—and Charge II being a violation of the 93rd Article of War, 10 U.S.C.A. § 1565, viz., sodomy.

10. The charges were sworn to by First Lieutenant Marion E. Taake before Lieutenant Kline on the 29th day of March, 1945. On 31 March, 1945, they were referred by Lieutenant Colonel R. M. Connolly, by command of Brigadier General Hoge to Major Lowell A. Spires, trial judge advocate (T. 196). On 1 April 1945 they were read to the accused by Lieutenant Kline.

11. The "Pretrial Investigating Officer's Report" (mimeographed paragraphs 1 and 2, T. 190, 191) states that Lieutenant Kline informed the accused of the charges alleged against him; of the names of the accuser and witnesses so far as known; of the fact that the charges were about to be investigated; of his right to cross-examine all available witnesses against him and to present anything he might desire in his own behalf, either in defense or mitigation; of his right to have the investigating officer examine available witnesses requested by him; and that, in the presence of the accused, the investigating officer had examined all available witnesses and documentary evidence and reduced the material testimony to a statement embodying the substance of the testimony taken on both sides. The language referred to was part of a mimeographed form supplied to Lieutenant Kline on or about 29 March, 1945. He actually did none of the things therein stated between 29 March 1945 and 31 March 1945 (T. 103, 104 to 109), all of his investigation having been made prior to 21 March 1945 (T. 46). However, on 1 April 1945, he showed petitioner copies of some of the statements he had taken from the complaining witnesses (T. 35).

12. Following the reading of the charges to petitioner by Lieutenant Kline on 1 April 1945 petitioner was taken back to Jugesheim, Germany, approximately 100 miles east of Langenlonsheim and placed in confinement to await trial by a general court-martial. Lieutenant Kline rejoined his company at the front, approximately 100 miles east of Jugesheim and 200 miles east of Langenlonsheim.

12. On 2 April 1945 petitioner was advised that his trial would be held the next day, 3 April (T. 24). Dr. Joseph J. Frank, a Major in the Medical Corps, had been appointed by the court at a time not disclosed by the record to defend petitioner (T. 24-237). Petitioner first learned of the appointment at about 5:00 P.M. on 2 April 1945. At that time he had a conversation with Major Frank and told him that he wanted Captain Evans of Battalion Headquarters, who had had considerable experience in defending before courts-martial, to aid in his defense as counsel, Major Frank having advised him that he (Frank) had had no experience in defending (T. 41). Major Frank agreed to "see what he could do [saying] the trial was coming up the next day and he would ask at the trial for a continuance to secure witnesses also, and request the defense counsel" (T. 25). The record of trial shows no such requests. However, it does show "The accused stated that they were satisfied with the appointed counsel" (T. 240).

13. Petitioner had indicated, both to Lieutenant Kline and to Major Frank, his desire to have in attendance at the trial several witnesses named by him. This included the Sergeant of his company, Captain Evans and certain privates, by whom he hoped to establish that the entrance into the cellar had been in the line of his duty and that he had never worn a mustache, a circumstance deemed to be important in view of the fact that the complaining witnesses had stated their assailant had a mustache. The record is not clear as to what transpired following these requests. However, Lieutenant Kline, on or about 1 April 1945, received orders to locate the witnesses named—and others—and to have them at the trial on 3 April. He attempted to do so (T. 57-63-64-65); but "the record indicated that one of the men had been wounded and evacuated * * * and the other was with a platoon * * * the exact location of which we did not know" (T. 66). Lieutenant Kline spent all day of 2 April 1945 getting back to the place of trial—150 to 175 miles over rather hazardous route (T. 66)—but was unable to produce any of the witnesses for the defense (T. 67 to 70-94).

14. On 3 April 1945 at about 1:00 o'clock P.M. a General Court-Martial, composed of a Law Member and five other officers, was convened to try petitioner and Arnold, common trial being consented to. Upon arraignment each pleaded not guilty to the charges and specifications against him. No special pleas were interposed (T. 246). The taking of evidence consumed approximately three hours (T. 246 to 278). After oral argument by the defense the court was closed and upon secret written ballot both defendants were

found guilty of all specifications and charges and sentenced to be hanged by the neck until dead (T. 279-280).

15. On 12 April 1945 Lt. Colonel Chester D. Silvers, Staff Judge Advocate, submitted his review of the court-martial proceedings, holding that the evidence was legally sufficient to support its findings and sentence and that there were no irregularities or errors in the record which might be regarded as injuriously affecting the substantial rights of the accused or as invalidating the sentence in whole or in part. He therefore recommended approval of the sentences, making the further recommendation, however, that if the sentences be confirmed they be mitigated to dishonorable discharge, total forfeitures and confinement at hard labor for life (T. 171-181).

16. The record of trial was reviewed by the Staff Judge Advocate who, under date 5 July 1945, recommended, as to accused Anthony (petitioner) that only so much of the finding of guilty of the specification of Charge II as involved a finding of guilty of attempt to commit sodomy in violation of Article of War 96, 10 U.S.C.A. § 1568, be approved (T. 143-159). This recommendation was adopted by the confirming authority 6 July 1945 (T. 134). The record of trial was also reviewed by Board of Review No. 1, Branch Office of the Judge Advocate General with the European Theater, A.P.O. 887, which pointed out some irregularities in the proceedings in an opinion entered 29 August 1945 (T. 136-145). It held, however, that some of the irregularities were harmless, that others had been waived and that no errors injuriously affecting the substantial rights of either accused had been committed during the trial.

17. Under date of 20 September 1945 a commitment of petitioner to the United States Penitentiary at Lewisburg, Pennsylvania, for "the term of his natural life" was issued. Subsequently the place of confinement was designated as the United States Penitentiary at Leavenworth, Kansas. On 11 June 1946 so much of the confinement at is in excess of thirty-five years was remitted by direction of the President.

## Opinion.

The findings are based almost entirely upon the record of the proceedings before the court-martial, introduced in evidence in this case as "Exhibit D" and upon the testimony of former Lieutenant William L. Kline, the investigating officer, who hereinafter will be referred to as Lt. Kline. At the outset it should be stated that this gentleman impressed the court as an honest, able, conscientious young man, whose demeanor as a witness left little to be desired. Enunciating clearly, he undertook to answer, courteously, concisely and to the best of his recollection, all questions put to him by counsel and the court, regardless of whether they reflected upon the performance of his official duties or indicated that they had not been carried out strictly in accordance with the Articles of War and Manual for Courts-Martial. Called as a witness on behalf of petitioner, he gave no evidence of being biased or prejudiced and the court feels that he told the truth throughout his lengthy examination and cross-examination. Later references to him in this opinion, therefore, are not intended to cast any opprobrium upon him.

At the outset the power of this court to grant any relief to petitioner in this, a habeas corpus, proceeding is questioned. It is appropriate, therefore, to examine the decisions of superior courts upon this issue. Learned counsel for the respondent, in a well and carefully prepared brief, urge that the inquiry of this court must be limited to whether the court-martial was properly constituted, whether it had jurisdiction of the person and subject matter and whether it had power to impose the sentence which it imposed. Summarizing, they insist that this court may determine, in a collateral attack such as this, only whether the court-martial acquired jurisdiction over petitioner and the offense committed by him; whether it was a lawful and legally constituted tribunal; whether the sentence is a legal sentence; and whether petitioner was accorded the rights of appellate review given him by the Articles of War. They argue quite vigorously that this court erred in receiving any evidence dehors the record.

■ The cases cited by respondent[2] seem to support, generally, the contention made. Few of them, however, and none of the Supreme Court cases, were decided within the past decade. Later cases seem to have enlarged the scope of the inquiry to be made by a District Court in habeas corpus proceedings, making the remedy available to test the validity of a judgment of a state or federal court—and, a fortiori, it would seem, of a court-martial—attacked on the ground that constitutional rights of the prisoner have been violated. Some of the cases so holding are set out in the margin.[3] The two last-cited—Carter v. Illinois and Craig v. Harney—were decided since briefs were filed in this case. In each the court reiterated that: "Questions of fundamental justice protected by the Due Process Clause may be raised, * * * dehors the record."

Notwithstanding what has just been said this court accepts, without cavil, the statement of learned counsel for the respondent to the effect that it "is not a tribunal sitting in an appellate review of the court-martial judgment"; that "it has no authority to examine the record of trial and the processes of military appellate review to determine whether errors were committed with respect to the admission of evidence; whether the rulings upon issues arising during the course of the trial were correct or whether the ultimate findings of guilt of accused are sustained by the evidence."[4] With the province of this court thus de-lineated, it now proceeds to consider the basic question raised, i. e. the legality, under the findings, of petitioner's confinement.

■ The nature of a court-martial is described in McClaughry v. Deming, 186 U.S. 49, 62, 63, 22 S.Ct. 786, 791, 46 L.Ed. 1049 as follows:

"* * * A court-martial is the creature of statute, and as a body or tribunal, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction. It was said by Mr. Chief Justice Waite in Runkle v. United States, 122 U.S. 543, 555, 7 S.Ct. 1141, 30 L.Ed. 1167:

"'A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accomplished, it is dissolved. [citing authority]. Such, also, is the effect of the decision of this court, in Wise v. Withers, 3 Cranch 331, 2 L.Ed. 457, which, according to the interpretation given it by Chief Justice Marshall in Ex parte Watkins, 3 Pet. 193, 209, 7 L.Ed. 650, 655, ranked a court-martial as "one of those inferior courts of limited jurisdiction whose judgments may be questioned collaterally." To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that

[2] Ex parte Reed, 100 U.S. 13, 25 L.Ed. 538; Carter v. Woodring, 67 App.D.C. 393, 92 F.2d 544, certiorari denied, 302 U.S. 752, 58 S.Ct. 283, 82 L.Ed. 582; McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049; United States v. McDonald, D.C., 265 F. 754, appeal dismissed 256 U.S. 705, 41 S.Ct. 535, 65 L.Ed. 1180; Ex parte Potens, D.C., 63 F. Supp. 582; Ex parte Besherse, D.C., 63 F.Supp. 997.

[3] Moore et al v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Cochran v. Kansas et al, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453; Pyle v. Kansas et al., 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Sharpe v. Buchanan, 317 U.S. 238, 63 S. Ct. 245, 87 L.Ed. 238; Schita v. King, 8 Cir., 133 F.2d 283; Hicks v. Hiatt, D.C., 64 F.Supp. 238; Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216; and Craig et al v. Harney, 67 S.Ct. 1249.

[4] The quotations are from respondent's brief. Counsel for respondent recognize that Hicks v. Hiatt, D.C., 64 F.Supp. 238 is contra; but as to this case it is stated to be "considered by the Government as an unfortunate legal accident and it is vigorously urged that it not be considered as a precedent." Cf. In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499.

all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law. Dynes v. Hoover, 20 How. 65, 80, 15 L.Ed. 838; Mills v. Martin, 19 Johns, [N.Y., 7] 33. There are no presumptions in its favor, so far as these matters are concerned. * * *.'"[5]

The first question which evolves is somewhat dual; Did the court-marital which found petitioner guilty have jurisdiction and were all the statutory regulations governing its proceedings complied with? There may be eliminated, from the first prong of the question stated, issues not specifically raised; i. e., whether petitioner was subject to military law, whether the members of the court were competent to serve and whether they were appointed by one authorized to make the appointments. The presumption to which the respondent is entitled dispenses with any proof on those matters. That leaves, then, the question of jurisdiction only insofar as it is dependent upon compliance with statutory regulations, Articles of War, 10 U.S.C.A. § 1471 et seq., and constitutional provisions, especially Due Process of Law under Amendment V.

Specifically, petitioner contends that the court-martial was without jurisdiction to try him because Article 70 of the Articles of War [6] was not complied with. He also contends that the failure to conduct the examinations required under this article and the Manual for Courts-Martial, the failure of the Reviewing Authority to set aside the conviction for insufficiency of evidence, the denial of witnesses and opportunity to prepare for trial, the denial of counsel of his own choice, the designation of a medical officer who knew nothing of trial procedure as counsel, the alleged disqualification of certain members of the court-martial, and

[5] See also Givens v. Zerbst, 255 U.S. 11, 41 S.Ct. 227, 65 L.Ed. 475; Collins v. McDonald, 258 U.S. 416, 42 S.Ct. 326, 66 L. Ed. 692; Carter v. Woodring, 67 App.D. C. 393, 92 F.2d 544, certiorari denied 302 U.S. 752, 58 S.Ct. 283, 82 L.Ed. 582; Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann.Cas. 640; Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876; and Reilly v. Pescor, 8 Cir., 156 F.2d 632.

[6] Title 10 U.S.C.A. § 1542. "Charges; action upon (article 70) Charges and specifications must be signed by a person subject to military law, and under oath either that he has personal knowledge of, or has investigated, the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief.

"No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides.

"Before directing the trial of any charge by general court-martial the appointing authority will refer it to his staff judge advocate for consideration and advice.

"When any person subject to military law is placed in arrest or confinement immediate steps will be taken to try the person accused or to dismiss the charge and release him. Any officer who is responsible for unnecessary delay in investigating or carrying the case to a final conclusion shall be punished as a court-martial may direct. When a person is held for trial by general court-martial the commanding officer will, within eight days after the accused is arrested or confined, if practicable, forward the charges to the officer exercising general court-martial jurisdiction and furnish the accused a copy of such charges. If the same be not practicable, he will report to superior authority the reasons for delay. The trial judge advocate will cause to be served upon the accused a copy of the charges upon which trial is to be had, and a failure so to serve such charges will be ground for a continuance unless the trial be had on the charges furnished the accused as hereinbefore provided. In time of peace no person shall, against his objection, be brought to trial before a general court-martial within a period of five days subsequent to the service of charges upon him." As amended Aug. 20, 1937, c. 716, § 2, 50 Stat. 724.

the fact that he was not advised as to his rights, each resulted in denying to him "Due Process of Law" and collectively resulted in a "Totality of Errors" which, under the rationale of Hicks v. Hiatt, cited in footnotes 3 and 4, entitle him to be released from custody. In the judgment of this court the first contention is the sounder.

 Counsel for respondent urge that the pre-trial investigation directed by Article of War 70 is for the benefit of the appointing and referring authority and compliance with it is not jurisdictional; that it is an administrative procedure prescribed for the purpose of informing the appointing and referring authority as to the facts of an alleged offense to the end that he might determine the proper course of disciplinary action; that it is directional and not mandatory in its operation and confers upon an accused no rights, the deprivation of which affects the jurisdiction of the court-martial; and that even the most flagrant violation of the article does not constitute any ground for annulling, in a habeas corpus proceeding, a sentence rendered by a court-martial. Petitioner, on the other hand, contends that compliance with the article is mandatory and that failure to comply deprives the court—it being one of special and limited jurisdiction —of the jurisdiction which may be "acquired only by following the mode designated by the statute." He urges that an ex parte inquiry made prior to the drawing up of the formal charges cannot, and does not under any circumstances, serve in lieu of the formal investigation contemplated by the statute. He likens the situation shown by the findings to one in which an action has been brought in a District Court without exhausting administrative remedies as required by a federal statute; points out that the rulings of the Judge Advocate General, as indicated in the Manual for Courts-Martial, seem to be contrary to the view now urged; and insists that official opinions of the department support his contention that: "A court-martial is without jurisdiction to try an accused upon charges referred to it for trial without having been first investigated in substantial compliance with the provisions of A.W. 70 * * *." [7]

The question is not an easy one and the right answer is elusive. The excerpt quoted in the preceding paragraph seems to have been superseded or overruled in a later ruling, [8] which is set out in the brief of respondent, in which it is said that "opinions on analogous points indicate that the first three paragraphs of Article of War 70 have come to be regarded as directory only in all respects and that failure to comply therewith is not fatal error." The situations thought to be analogous were listed as failure to swear witnesses where the facts were admitted or otherwise proved; failure to sign or swear to charges; report of investigation by telephone instead of in writing; no reinvestigation after staff Judge Advocate had amended charges by changing the article of war and the name of the owner of ·stolen property; and reference of the charges to the accuser for investigation. Passing such doubt as this court has that any of the situations are analogous, little light is shed upon the problem by the conflicting administrative rulings; so full exploration of the question seems to be dictated.

Article 70 seems to have had but little consideration by the courts, the sole case by an appellate court found or cited on the point now in issue being Reilly v. Pescor, 8 Cir., 156 F.2d 632, certiorari denied, 67 S.Ct. 353.[9] Therein it was said (156 F.2d at pages 634, 635).

"* * * This requirement of a preliminary investigation would seem to be comparable to provision found in many of the states, where prosecution by information as distinguished from indictment by grand jury is authorized. These statutory provisions usually provide that an information can be filed by the prosecuting officer only after the defendant has been accorded the right to a preliminary examination or hearing, and unless waived the requirement

---

[7] Digest of Opinions, Judge Advocate General, 1912–1940, Section 428(1), P. 292.

[8] Holding of Board of Review in C. M. 299477, Floyd 17 B.R. 149, 153–156 (decided February 2, 1943).

[9] See, however, Hicks v. Hiatt, cited in footnotes 3 and 4.

is usually held to be mandatory and jurisdictional. The Judge Advocate General of the Army so holds. Thus in the Digest of Opinions of the Judge Advocate General of the Army (1912-1940), at page 292, it is said:

" 'A record of trial showed affirmatively that no investigation of the charges had been made prior to the trial. Held that the provisions of Article of War 70, 41 Stat. 759 [10 U.S.C.A. § 1542], with reference to investigating charges are mandatory and there must be a substantial compliance therewith before charges can legally be referred to trial. A court-martial is without jurisdiction to try an accused upon charges referred to it for trial without having been first investigated in substantial compliance with the provisions of Article of War 70, and in such a case the court martial proceedings are void ab initio.' "

The Manual for Courts-Martial, [10] Chapter VII and especially Section 35, paraphrases and elaborates upon Article 70 and directs the proceedings to be taken before the charge is referred to a general court-martial. It and the statute both clearly indicate that the impartial investigation contemplated should be conducted upon the charges and specifications as formally prepared rather than to determine whether charges will be made. If the sequence were the only defect disclosed by the record before this court it might, perchance, be overlooked; but other provisions of the statute seem also to have been ignored. Thus it is clear that petitioner was deprived of his right to cross-examine the witnesses against him although he specifically requested permission to do so. Moreover, the witnesses in his behalf, although available and named by him to the investigating officer with a request that they be produced, were not produced at the Pre-trial Investigation or at the trial before the General Court-Martial.

This court is well aware of the fact that the exigencies of war and the necessity of maintaining discipline in the armed forces make it imperative that a special system of courts be established which should be permitted to function without too strict adherence to pure formalism, legal or otherwise. But the defects pointed out above are, in the studied judgment of this court, too serious to be ignored. The Congress, in its wisdom, has prescribed the procedure to be followed. It has stated categorically what must be done. Whether failure to do the things required be construed as a defect precluding the acquiring of jurisdiction or whether the failure be held to deprive the accused of the due process contemplated by the organic law, the result is the same. Relief should be granted by a court of general jurisdiction, charged with the responsibility of inquiring into the legality of the detention of the accused.

In view of the conclusion reached it is unnecessary to review at length the other contentions made by petitioner. The inability of Lt. Kline to produce, at the trial, the desired witnesses, the circumstance that petitioner was defended—rather ineptly as might be expected—by a medical officer instead of by one trained in the law, the fact that he was required to go to trial the second day after the charges were filed and the suggestion that the reviewing authority might appropriately have set aside the findings of guilt as not supported by the evidence, individually and collectively might have justified this court in plagiarizing some of the language used by Judge Biggs, Senior Judge of the Circuit Court of Appeals for the Third Circuit in Hicks v. Hiatt, D.C., 64 F.Supp. 238. It has chosen, however, to rest its conclusion that petitioner is illegally detained and restrained of his liberty by the respondent upon the grounds discussed.

██ Order releasing petitioner from custody is this date being entered. Inasmuch as it is reviewable, 28 U.S.C.A. § 463, a good and sufficient bond, conditioned according to law, in the amount of Two Thousand Five Hundred ($2,500.) Dollars, to be approved by the clerk of this court, is being made a condition precedent. Rule 45, Rules of the Supreme Court, 28 U.S.C.A. following section 354.

---

[10] A Manual for Courts-Martial, U. S. Army, 1928, corrected to April 20, 1943, published 1943 by United States Government Printing Office.