FLACKMAN v. HUNTER, Warden.

No. 1074 H.C.

District Court, D. Kansas, First Division.

Jan. 12, 1948.

Howard F. McCue of Topeka, Kan.
(McCue & McCue of Topeka, Kan., on
the brief), for petitioner.

Randolph Carpenter, U. S. Atty., and James W. Wallace, Asst. U. S. Atty., both of Topeka, Kans. (Nicholas R. Voorhis, Lt. Col. U. S. Army, J.A.G.D., and Thayer Chapman, Major, U. S. Army, J. A. G. D., both of Washington, D. C., on the brief), for the respondent.

MELLOTT, District Judge.

Petitioner alleges that he is illegally held in custody and deprived of his liberty by the Warden of the United States Penitentiary at Leavenworth, Kansas. Respondent admits the custody, asserting that petitioner is legally confined and imprisoned and attaching photostatic copies of: (1) General Courts-Martial Orders No. 80, Headquarters, 84th Infantry Division, which, pursuant to Article of War 50½, 10 U.S.C.A. § 1522, disapproves a finding of guilty of rape and approves only the findings of guilty of fraternization and of stealing and carrying away from a person, one gold ring, value of over twenty dollars ($20), by force and violence and by putting that person in fear, thereby reducing a life term to 10½ years; (2) General Court-Martial Order No. 331, Headquarters, Third Service Command, Army Service Forces, Baltimore, Maryland, 18 December 1945, designating United States Penitentiary, Leavenworth, Kansas, as the place of confinement; (3) "Blue Seal" Order of the Secretary of War, dated 12 April 1946, remitting, by direction of the President, all of the sentence of petitioner in excess of six years; and (4) Record of Court Commitment showing that petitioner is serving a six-year sentence which began March 18, 1945. At the hearing the documents above referred to were introduced in evidence, as was also a photostatic copy of the record of the trial of petitioner by a court-martial convened at Homberg, Germany, 18 March 1945, together with accompanying papers. In addition to this evidence the petitioner testified and introduced in evidence a letter entitled, "Character Reference of Enlisted Man." From the whole record the court makes the following:

Findings of Fact.

1. Petitioner is 39 years of age and is married to his second wife. He has a daughter 11 years of age. He was inducted into the United States Army at Fort Mac Arthur, California, 26 December 1942. On the 5th day of March, 1945, he was serving as a private first class with Company F, 334th Infantry, 84th Infantry Division in active combat in Germany.

2. On the morning of 5 March, 1945, petitioner's company moved into the town of Homberg, Germany. On the night of 5-6 of March Petitioner was on guard at the Battalion Command Post. Whether his tour of guard duty was from 8:00 to 10:00 or from 10:00 to 12:00 was in dispute at the trial before the court-martial hereinafter referred to.

3. On 11 March 1945 petitioner was charged with: (1) Having, on or about 6 March 1945, at Homberg, Germany, raped a German girl; (2) fraternization; and (3) stealing and carrying away property of another of the value of over $20, by force and violence and by putting the other person in fear. During an identification parade, which was held on March 11, 1945 prior to the charges being filed, petitioner was identified as the soldier who left a bunker with Else Kamps on the night of 5-6 March, 1945.

4. Captain Walter C. Jessel was designated to investigate the charges against petitioner on 11 March 1945 (R. 25).[1] During the investigation the accused requested that certain witnesses be called in his behalf. This was done. Accused expressed a desire to cross-examine only one of the witnesses against him and this was permitted (R. 26).

5. 1st Lt. William W. Thompson, Company Commander of petitioner's company, recommended trial by general court-martial, 11 March, 1945 (R. 37). His report was submitted to Lt. Col. William J. Sutton, C. O. of 334th Infantry on March 12 (R. 26), who recommended trial by general court-martial on March 13. Lt. Col. Bruce

---

[1] References are to the page numbers indicated in pencil on the lower right-hand corners of the record of trial before the Court-Martial, Exhibit A herein.

874

Shorts, Jr., Division Judge Advocate, to whom the charges against petitioner were referred for consideration and advice under provisions of the 70th Article of War, 10 U.S.C.A. § 1542, recommended to the Commanding General, 84th Infantry Division, that the accused be tried by a general court-martial (R. 39).

6. By Special Orders No. 68, Headquarters 84th Infantry Division, 17 March 1945, a General Court-Martial was appointed "to meet at the call of the President thereof, for the trial of such persons as may be properly brought before it." Nine members of the court were listed. Captain Gunn was appointed as Trial Judge Advocate and Lt. Dorsey as Assistant Trial Judge Advocate. Major Charles R. Murrah was designated defense counsel and 1st Lt. John J. Rowe, assistant defense counsel.

7. By indorsement, dated 15 March 1945, the Flackman case was referred for trial to Captain Colin J. Gunn, Infantry, Trial Judge Advocate of general court-martial appointed by Special Order No. 68, Headquarters 84th Infantry Division.

8. The court proceeded to the trial of petitioner, March 18, 1945, before a court-martial composed of a law member and seven others, Lt. Col. William J. Sutton, who had previously recommended trial by general court-martial, having been excused. The Assistant Defense Counsel, 1st Lt. John J. Rowe, was also excused. The accused, petitioner here, stated to the court-martial that he desired to be defended by "regularly appointed Defense Counsel." The court was organized according to law, the accused stating he had no challenges of, or objection to, members of the court. Thereupon the members of the court and personnel of the prosecution were duly sworn, the accused was arraigned and the trial was begun. (R. 44).

9. The charges and specifications were:
"Charge I Violation of the 92d Article of War [10 U.S.C.A. § 1564].

"Specification: In that Private First Class Charles C. Flackman, Company E, 334th Infantry, did, at Homberg, Germany, on or about 6 March 1945, forcibly and feloniously, against her will, have carnal knowledge of Else Kamps.

"Charge II: Violation of the 96th Article of War [10 U.S.C.A. § 1568].

"Specification: In that Private First Class Charles C. Flackman, Company E, 334th Infantry, did, at Homberg, Germany, on or about 6 March, 1945, wrongly fraternize, with a German civilian, in violation of Memorandum, 84th Infantry Division, dated 23 November 1944, Subject: Fraternization, by having sexual intercourse with Else Kamps.

"Charge III: Violation of the 93rd Article of War [10 U.S.C.A. § 1565].

"Specification: In that Private First Class Charles C. Flackman, Company E, 334th Infantry, did, at Homberg, Germany, on or about 6 March 1945, by force and violence and by putting her in fear, feloniously take, steal and carry away from the person of Else Kamps, one gold ring, mounted with a purple stone, the property of Else Kamps, value of over twenty dollars ($20.00)."

10. The trial was begun at 9:30 A.M. on 18 March 1945 and concluded at 5:00 P.M. the same day. The accused was found guilty of all charges and sentenced "to be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor at such place as the reviewing authority may direct for the term of his natural life." (R. 11, 12).

11. The Commanding General of the 84th Infantry Division, Major General A. R. Bolling, approved the above sentence on March 25, 1945; designated U. S. Penitentiary, Lewisburg, Pennsylvania, as the place of confinement; and, pursuant to Article of War 50½, withheld the order directing the execution of the sentence (R. 121). This action was apparently taken upon the recommendation of Lt. Col. Bruce Shorts, Jr., Division Judge Advocate, who had made a careful examination and review of the trial record (R. 13–20).

12. Board of Review No. 3 of the Branch Office of the Judge Advocate General with the European Theater of Operations in its holdings, dated June 16, 1945, made the following conclusions;

(a) As to the charge of rape, the prosecution had not presented proof showing that

the defendant intended to complete his purpose in defiance of all resistance. "Her [the prosecutrix] conduct was not such as to lead accused to believe that their intercourse was without her reluctant consent, or that such consent was inducted by fear of death or other great bodily harm," either expressly or impliedly. The evidence presented a case of fraternization which, they reasoned, was incompatable with rape. Therefor, they held that the record of trial was legally insufficient to support a finding of guilty of the Specification and Charge I (R. 2, 7).

(b) Having decided that the evidence presented a case of fraternization by having sexual intercourse with a German girl, the finding of guilty of the Specification and Charge II was approved (R. 8).

(c) As to Specification and Charge III, which alleges that the accused did, by force and violence and by putting Else Kamps in fear, feloniously take, steal and carry away from the person of another, property of over twenty dollars ($20), the finding of guilty was approved. The sentence of ten years on this charge was also approved, this being a proper sentence for robbery. "Accused's actions in exploiting his status as an armed member of the conquering forces to induce prosecutrix to accompany him to an unoccupied house at midnight, and there, after indulging in sexual intercourse with her reluctant consent, demanding her ring as an implied prerequisite to permitting her to leave, sufficiently constituted application of constructive force and implied threat to render his unlawful taking robbery" (R. 9).

The opinion of the Review Board was submitted in writing to the Judge Advocate General with the European Theater of Operations. It was signed by two members of the three-man board, the third being designated "Sick in Hospital."

13. The Board of Review also held that the court was legally constituted and that no errors injuriously affecting the substantial rights of accused were committed during the trial.

14. The final result of the review was that only so much of the sentence as adjudged dishonorable discharge, total forfeitures, and confinement at hard labor for ten and one-half years was approved by the Board of Review (R. 9).

15. The holdings of the Board of Review were approved by Brigadier General E. C. McNeil, Assistant Judge Advocate General in the 1st endorsement to the report of the Review Board, 16 June 1945, War Department, Branch Office of the Judge Advocate General with the European Theater of Operations. The Commanding General was advised that, under the provisions of A. W. 50½, he should, by additional action, disapprove the findings of guilty of Charge I and its Specifications and reduce the period of confinement to ten years and six months (R. 1). General Bolling acted by signing the supplementary action, dated 20 June 1945 (R. 124).

16. The Secretary of War, by direction of the President, remitted so much of the sentence of petitioner to confinement as is in excess of six years, on April 12, 1946.

## Opinion.

The findings are based principally upon the record of the proceedings before the court-martial, introduced in evidence at the hearing as Exhibit A," most of the facts being substantially corroborated by the testimony of the petitioner.

 In the recent case of Anthony v. Hunter, Warden, May 29, 1947, D.C., 71 F. Supp. 823, this court outlined what it conceived to be its power to grant relief in a habeas corpus proceeding brought by a prisoner confined as a result of a conviction before a court-martial. Most of the attorneys in that case are of counsel in the instant case. Summarizing what was there said, a writ of habeas corpus is available to test the validity of a judgment of a court-martial attacked on the ground that constitutional rights of a petitioner have been violated; but this court is not a tribunal sitting in an appellate review of the court-martial judgment. It has no authority to examine the record of trial and the processes of military appellate review to determine whether errors were committed with respect to the admission of evidence; whether the rulings on issues arising during the course of the trial were correct; **or**

whether the ultimate findings of guilt of the accused are sustained by the evidence.

 A court-martial is, however, a creature of statute; and unless, convened and constituted in entire conformity with the provisions of the statute, it is without jurisdiction. It must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings were complied with; and that the sentence pronounced was in conformity with law. Anthony v. Hunter, supra.

Petitioner points out six facts or circumstances which, he contends, were jurisdictional defects. In the alternative, he contends that even if the court should find all of the contentions to be without merit, nevertheless he has served the maximum sentence authorized by law for the offenses of which he was convicted.

The alleged jurisdictional defects urged are:

A. Denial of counsel.

B. Denial of time to prepare for trial.

C. Review proceedings not in accordance with A. W. 50½; and, Review Board not legally constituted.

D. Staff Judge Advocate recommended case for trial, and then reviewed the trial proceedings.

E. Case was referred for trial 15 March 1945, to a court not created until 17 March 1945.

F. Record does not reflect thorough and impartial investigation under A. W. 70.

These will be considered in the order stated.

 A. Petitioner's present contention that he was denied counsel seems to be based upon the fact that assistant defense counsel, appointed to assist in his defense, was not present at the trial. The record shows that he was "absent", having been "excused" (R. 44). When petitioner "was asked by the trial judge advocate whom he desired to introduce as counsel," "The accused stated he desired to be defended by regularly appointed Defense Counsel." Regularly appointed defense counsel, Major Charles R. Murrah, was present and ap-

pears to have done a creditable job of defending him. At no stage of the proceeding, so far as shown by the record, did petitioner insist that the assistant defense counsel be present or that the case be continued until he could be present. Moreover, he testified at the hearing of the instant proceeding that the notes taken by the assistant defense counsel a few days before the trial before the court-martial had been turned over to Major Murrah and were used at the trial. The only case cited by petitioner in support of the present contention is a decision by the Judge Advocate General in 1946, reported in a Bulletin of the J. A. G. of the Army, Vol. 5, Pg. 332 [not available to this court], where it seems to have been held that the accused's expressed desire that he be "defended by the defense counsel and assistant defense counsel" in a trial for murder should have been complied with. Apparently the court-martial had sustained a challenge made by the trial judge advocate against the assistant defense counsel. The holding was that "The legal effect of the action * * * sustaining the challenge to the assistant defense counsel, who was available and whom accused had stated he desired as his counsel, was to deny the accused the right guaranteed him by A. W. 17 [10 U.S.C.A. § 1488] to be represented by available counsel of his own selection."

Assuming, for present purposes, the correctness of the ruling relied upon, it is the court's opinion it cannot aid this petitioner. As stated above, at no stage of the trial did he make any objection to the absence of the assistant defense counsel. Moreover, there is not a scintilla of evidence to indicate that any request whatever was made by him, save and except as indicated in the language quoted from the record in the preceding paragraph. Decided cases involving the basic question of intelligent waiver of counsel, in which the accused had been wholly without counsel, are somewhat analogous and legion in number. A few may appropriately be cited at this juncture. See e. g. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Macomber v. Hudspeth, 10 Cir., 115 F.2d 114; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, and Amrine v. Tines, 10 Cir., 131 F.2d 827. It

is held that petitioner's contention he was denied counsel is without merit.

■ B. Petitioner has failed to show that he was put to trial without sufficient time to prepare his defense. The record shows that he was placed in confinement on March 11; that the charges were sworn to on March 12; and that the report and recommendation of the investigating officer were submitted on March 12, apparently after an active and quite thorough investigation in which the petitioner participated. He was served with a copy of the charges on March 16th and trial occurred on March 18th. During the investigation certain witnesses requested by the petitioner were called and questioned in his presence, and he was permitted to cross-examine the only witness against him whom he expressed a desire to cross-examine. The Lieutenant designated as Assistant Defense Counsel conferred with the accused several days before trial and, while he did not appear as counsel at the trial, the Defense Counsel, Major Murrah, as pointed out above, had his notes and apparently had collaborated with him in preparing for trial. Although Major Murrah, according to petitioner's testimony had consulted with him only about an hour before trial, the accused proceeded to trial and concluded it without any objection or request for continuance.

■■ C. The Board of Review was constituted of not less than three officers of the Judge Advocate General's Department in accordance with Article of War 50½, 10 U.S.C.A. § 1522. This Review Board examined the court-martial record and its opinion was submitted in accordance with statutory requirements by a written report of its holdings, signed by two of the three members. The Assistant Judge Advocate approved the holding of the Review Board that the record of trial was insufficient to support the charge of rape and so much of the sentence to confinement as exceeded ten and one-half years. General McNeil was particularly concerned about the excessive confinement to life imprisonment and recommended that it be reduced to ten years and six months. The convening and reviewing authority, Major General Bolling, Commanding General of the 84th Infantry Division, then ordered: "Only so much of the sentence as provides for dishonorable discharge, total forfeitures and confinement at hard labor for ten years and six months is approved and will be duly executed." When the finding of guilty on Charge I was disapproved by the Assistant Judge Advocate General, so much of the sentence as the court-martial had authority to give on Charge II and Charge III remained. As the reviewing authority, the General could then approve or disapprove the whole of what remained or any part of the sentence in accordance with Articles of War 46 and 47, 10 U.S.C.A. §§ 1517 and 1518, or "he might have referred the proceedings back to the court for revision, but he was not required to do so—if in his opinion this was not necessary, and the sentence was justified by the findings which he did approve." Carter v. McClaughry, 183 U.S. 365, 387, 22 S.Ct. 181, 190, 46 L.Ed. 36.

■ D. There is no merit to petitioner's contention that he was denied due process of law because of the dual role of the Staff Judge Advocate, Lt. Col. Bruce Shorts, Jr. Article of War 70 requires the appointing authority, before directing the trial of any charge by general court-martial, to refer it to "his staff judge advocate for consideration and advice." Article of War 46 requires the reviewing or confirming authority to refer every record of trial by general court-martial received by him, "before he acts thereon, to his staff judge advocate or to the Judge Advocate General." The latter Article also provides that "No sentence of a court-martial shall be carried into execution until the same shall have been approved by the officer appointing the court or by the officer commanding for the time being."

Petitioner seems to be complaining of the fact that the Congress, in its wisdom, has seen fit to require that the staff judge advocate shall act twice in his case. He does not contend that either statutory provision is unconstitutional and manifestly any such contention would be fallacious. If his complaint were that the appointing and confirming authority had neglected to take the action required under either section it might present a serious question. But no such contention is made. When it is borne in mind that the Congress is simply requiring, in each instance, that the commanding au-

thority avail itself of legal advice in connection with these two important steps in a court-martial proceeding, the suggestion implicit in the present contention, that a different legal adviser should be called each time, borders upon absurdity.

■ E. The alleged jurisdictional defect mentioned in this subdivision is not discussed by petitioner upon brief. It is set out in the outline of points to be discussed upon brief, as one of the jurisdictional defects appearing in the record and which rendered the court-martial void, in the following language:

Case was referred for trial 15 March 1945 to a court not created until 17 March 1945.

Respondent points out that it is standard military practice, when a number of cases remain untried by a court and the appointing authority desires to dissolve that court, to re-refer all unassigned cases to another court. While the present record does not make it crystal clear that that was what occurred here, in Special Orders No. 68 (R. 43) it is stated that

"All charges on which there have been no arraignments, now in the hands of the Trial Judge Advocate of the General Court board appointed by paragraph 2, Special Orders No. 61, this headquarters, 10 March 1945 are withdrawn from the said Trial Judge Advocate and referred to the Trial Judge Advocate of the above named Court."

The record of trial shows that the court before which petitioner was tried met "pursuant to the foregoing Order" (R. 44). It cannot be found, on the record before this court that there was such a defect or irregularity in referring this petitioner's case for trial to the court-martial appointed on 17 March as to vitiate all of its proceedings.

■ F. The next contention is that Article of War 70,[2] 10 U.S.C.A. 1542, was not complied with. This court's view as to what constitutes compliance with this article was recently expressed in Anthony v. Hunter, supra, and will not be here repeated. During the hearing of the instant case the court indicated it was of the opinion petitioner's testimony corroborated, rather than contradicted, the court-martial record which, on its face, shows full compliance with A. W. 70. Petitioner stated[3] that he was permitted to cross-examine the only witness which he desired to cross-examine and admitted that all of the witnesses desired by him were called. The court therefore cannot find as a fact that he was not given "full opportunity * * * to cross-examine [the] witness against him * * * and to present anything he * * * desire [d] in his own behalf either in defense or mitigation * * *." The view heretofore expressed that A. W. 70 was complied with is adhered to.

■ All of the alleged jurisdictional defects have been found to be nonexistent. Consideration will now be given to petitioner's alternative contention that he has served the maximum sentence authorized by law for the offenses of which he was convicted. (Charges II and III Finding No. 9, supra). It seems to be agreed by both parties that the maximum sentence under Charge II was six months, leaving for consideration by this court only the question whether petitioner was properly sentenced to ten years under Charge III for "robbery" or whether he should have been sentenced to a maximum of one year for "larceny."

The specification in Charge III is taken, word for word, from the form set out in the "Manual for Courts-Martial U.S. Army,

---

[2] "No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides."

[3] The record has not been transcribed; so the pages in the transcript cannot be shown. However, the testimony has been read to the court since the hearing was concluded.

1928 (corrected to April 20, 1943)," in appendix 4 at page 250, to be used in charging robbery. On the same page and immediately following is the form specified to be used in charging larceny. The difference between the two consists primarily of the addition, in the robbery charge, of the words that the taking, stealing and carrying away was "by force and violence and by putting in fear," together with the addition that it was "from the person" of the custodian, or, alternatively from his or her "presence." A larceny charge, on the other hand, is made in the language that the accused "did feloniously take, steal and carry away."

Both forms contain blanks indicating that the value of the property taken should be filled in. That was done in the instant case, the value of the property being alleged to be "over twenty dollars ($20.00)." Apparently the prosecutor thought that it was necessary to establish that the value of the ring taken was in excess of $20, as indicated from the colloquy on page 82 of the Record; but the definition of robbery set out in the Manual at Pages 170 and 171 does not support that view. Nothing is there said about value, the emphasis being, quite properly, put upon force and violence and putting in fear. True, it is there stated that the elements of larceny—that is, a taking, stealing and carrying away— "must always be present and should be alleged in the specification and proved at the trial." Emphasis is put throughout the discussion, however, upon the necessity of proving that the taking "was by force and violence or putting in fear, as alleged," the admonition being added that "when the evidence falls short of proving the force or fear or other facts necessary to robbery but does prove larceny, the accused, by proper exceptions, may be found guilty of larceny."

As pointed out by learned counsel for the respondent, upon brief, the court-martial, if it had seen fit to do so, could have found the accused guilty of a larceny but not guilty of robbery by finding him guilty of the specification except the words "by force and violence and by putting her in fear" and of the excepted words, "not guilty." A review of the record of trial by this court inclines it to a belief such a holding might well have been made; but this court has no power to substitute its view, even if positively entertained, for that of the trier of the facts. That could only be done by the reviewing authorities. They have taken the view that the accused, after indulging in sexual intercourse with the reluctant consent of a German female, demanded her ring "as an implied prerequisite to permitting her to leave [which] sufficiently constituted application of constructive force and implied threat to render his unlawful taking robbery."

█ Since this court cannot hold, as a matter of law, that the court-martial proceeding was void or the judgment pronounced by it was beyond its jurisdiction, the writ of habeas corpus heretofore issued must be discharged, petitioner must be remanded to the custody of the respondent and the petition for a writ must be dismissed. Order so providing is this date being signed.