**HAYES v. HUNTER, Warden.**

**FRAZIER v. HUNTER, Warden.**
Nos. 1140, 1223.

United States District Court
D. Kansas.
First Division.
Oct. 25, 1948.

Homer Davis, of Leavenworth, Kan., for petitioner Hayes.

Elisha Scott and Charles Scott, both of Topeka, Kan., for petitioner Frazier.

Lester Luther, U. S. Atty., Eugene Davis and James W. Wallace, Asst. U. S. Attys., all of Topeka, Kan., and Lieutenant Colonel N. R. Voorhis, JAGD, of Washington, D. C., for respondent.

MELLOTT, District Judge.

Petitioners, in applications for writs of habeas corpus, separately assail the validity of their detention by the respondent warden. Writs having been granted, the petitioners were brought before the court at separate times and in each case an identical record of the court-martial proceeding, in which they were tried jointly, was received in evidence.

The record of trial before the court-martial shows that these petitioners and an additional defendant, viz., Private Richard Dickerson, were tried jointly by a court-martial in Manila, P.I., on a charge of violation of the 94th Article of War, 10 U.S.C.A. § 1566, the specification being that they "acting jointly and in pursuance of a common intent, did, at A. P. O. 353, on or about 14 December 1945, agree and conspire with Private First Class Henry F. Rhinefield, Junior, to obtain the payment of a false and fraudulent claim against the United States in the amount of $1,494.00, for services alleged to have been rendered the United States by First Sergeant James R. Dillard, * * *, which claim was false and fraudulent in that said First Sergeant James R. Dillard was a fictitous person, and which was then known by the said * * * [three accused] to be false and fraudulent." All three were found guilty of the specification and the charge and each was sentenced to be dishonorably discharged the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor, at such place as the reviewing authority might direct, for five years. The sentences were duly approved and both of the present petitioners are now in the custody of the respondent warden, the United States Penitentiary at Leavenworth having been duly designated as the place of their confinement.

Each petitioner makes two principal contentions: (1) That there was a total lack of evidence presented at the court-martial trial to support his conviction; and (2) that his counsel was ineffective. Petitioner

Hayes testified at some length; but petitioner Frazier's case was submitted upon the record of trial before the court-martial and the evidence taken in Hayes' case.

The alleged offense occurred about the middle of December 1945. The defendants were held in custody in a stockade from about December 15, 1945, until the 8th day of May 1946. First Lieutenant Thomas E. Embry, on April 3, 1946, had been appointed defense counsel and First Lieutenants Robert B. Walls, Jr., Donald G. Stout and Charles L. Martinelli had been appointed assistant defense counsel. When the cases were called for trial, in response to an inquiry by the trial judge advocate as to whom each defendant desired to introduce as counsel, the record shows "each accused stated he desired to be defended by regularly appointed defense counsel and expressly excused remaining defense staff" (R. 64-65). At that time Lt. Stout was present and he represented the defendants throughout the trial. While the testimony of petitioner Hayes indicates that his first conference with designated defense counsel had been on May 7, 1946 (T.R. 4, 5), on or about that day the deposition of Henry Rhinefield, Jr., one of the individuals who, it was charged, had cashed the fictitious voucher, was taken upon interrogatories (R. 70-75).

At the beginning of the trial before the court-martial the prosecution advised the court that Rhinefield, the witness referred to in the preceding paragraph, was sick in bed at the Philippine Detention and Rehabilitation Center and, on the advice of the medical officer, it was requested "that he not testify in court because of his physical condition." It was then stated that the interrogatories had been put in writing and would be submitted to the court as prosecution's Exhibit I. Thereupon defense counsel stated that the deposition had been "taken by the trial judge advocate in the presence of the defense counsel, and not by the defense counsel" (R. 68). No objection was made to the deposition. Counsel then stipulated that the official records of the 3779th Quartermaster Truck Company showed that no such person as First Sergeant James R. Dillard—the payee in the fictitious voucher—had ever been in that company; that if Technical Sergeant Lloyd A. Miller were present and sworn as a witness, he would testify that on the 15th day of December 1945, a white soldier, later identified as Henry F. Rhinefield, presented a voucher under the name of James R. Dillard, and received the equivalent of $1,494 in American money in payment of the voucher; and that the document marked for identification as prosecution's Exhibit I was a photostatic copy of the pay voucher presented to Technical Sergeant Miller by Rhinefield. The last-mentioned voucher was then admitted (R. 69).

In connection with the receipt in evidence of the deposition of Rhinefield the president of the court inquired of defense counsel whether he had been given an opportunity to cross examine the witness, and, the answer being in the affirmative, defense counsel was then asked whether he had any objection to its admission in evidence to which he replied: "No Sir, no objection." The deposition of Rhinefield was then read into the record, the documents above referred to were admitted and the prosecution then rested. Thereupon the defense, in order "to lay the groundwork for perjuring the prosecution's witness, Henry Rhinefield," called a witness by the name of LaFargue, who had previously been convicted upon a charge similar to that upon which the defendants were being tried, who testified, in substance, that Rhinefield had stated to him, in the stockade, that force had been used in securing the statement he made incriminating the defendants. Each defendant then testified, dwelling at length upon alleged beatings which had been inflicted upon them in efforts to secure confessions. No confessions, however, were introduced in evidence.

Near the end of the trial defense counsel stated he wished "certain stipulations with the prosecution concerning the deposition that was introduced into evidence earlier in the trial." He stated: "If the trial judge advocate does not wish to make these stipulations, the defense will have to reverse its opinion of the stipulation and object to it on the grounds that the defense feels the court should know more about the deposition than they know now at this time" (R. 95). Following additional colloquy and a recess of the court, defense counsel stated it was: "* *. * *. stipulated between the prosecution and the defense, with the con-

sent of the accused, that the witness, Henry Rhinefield, is now under psychiatric examination at the 65th Station Hospital. He was confined in the hospital shortly after he was convicted because he was physically sick as a result of his mental attitude in regards to testifying on this case and felt he would collapse if he had to testify. His case history showed he had a collapse about a year ago and his physician feels he will have a mental collapse if he is forced to testify at this time. It is further stipulated that the witness knows the difference between right and wrong, in the opinion of the physician, and the prosecution and the defense. For this reason the deposition was taken."

Thereupon the law member of the court said: "Does the prosecution object to the stipulation?" The prosecution stated it did not " * * * except to this extent, that the physician thinks he had a nervous breakdown because of the previous conviction, and it would be hard for him to travel and testify in court. It might have a bearing on his physical condition. (R. 96)."

The portion of the record to which reference has been made shows, as contended by the petitioners, that they were convicted largely upon the evidence of Rhinefield, adduced by deposition, plus the admissions of their counsel and the forged voucher and supporting papers, introduced in evidence with but little foundation having been laid. It also tends to show, as petitioners argue, that counsel representing them was "ineffective," "inept," and at least to some extent, seems but to have "attempted to lock the barn after the horse had been stolen," as suggested by counsel now appearing for them. But the limited scope of the permissive review to be made by a court of general jurisdiction in a habeas corpus proceeding, Hunter, Warden v. Wade, 10 Cir., 169 F.2d 973, September 7 1948, and cases therein cited; Anthony v. Hunter, D.C., 71 F.Supp. 823; Flackman v. Hunter, D.C., 75 F.Supp. 871, 10 Cir., 173 F.2d 899, prevents a searching of the record for mere trial errors and suggests that the court pass at once to the question which it has jurisdiction to decide, viz. also: Were the petitioners deprived of their liberty in violation of the Constitution and laws of the United States and particularly and especially were they denied the Due Process of law contemplated by Amendment V?

In the briefs the opening paragraph in subdivision [1] of the discussion by Judge Clifford of the Southern Division of the District of Maine in Boone v. Nelson, D.C., 72 F.Supp. 807, 808 is referred to, which this court thinks is a sound statement of the applicable principles. It reads:

"Were it not for the contentions of petitioner, ably and vigorously argued, that the record is totally devoid of evidence to support a conviction, and that procedural errors by the tribunal amounted to a denial of due process of law, this Court would have deemed it unnecessary to do more than inquire whether it had jurisdiction of the person of the petitioner, and of the subject matter, and whether the sentence imposed was within its lawful powers. But counsel for petitioner, although admitting that the tribunal was legally constituted and possessed jurisdiction of the person and of the subject matter, argues that the sentence was in excess of jurisdiction for the reason that there was no evidence."

The learned judge, in the cited case, concluded, as this court is impelled to conclude in these cases, that there was not a lack of jurisdiction in the court-martial because of a total lack of evidence. The testimony of Rhinefield, if believed, supplemented by the other facts appearing from the evidence, was sufficient to justify a conviction. This court has examined the evidence, not to pass upon the correctness of the conclusion of the members of the tribunal but only to ascertain whether there was any evidence. Harlan v. McGourin, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann.Cas. 849. It has concluded that there was enough to give the tribunal "power and authority to act." Cf. Eagles v. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308. The fact that some of it was by deposition is not fatal. Article of War 25, Title 10 U.S.C.A. § 1496, specifically authorizes a deposition to be read in evidence in any case not capital when a witness, "by reason of age, sickness, bodily infirmity, imprisonment, or other reasonable cause, is unable to appear and testify in person * * *." That it was "taken upon rea-

sonable notice to the opposite party" seems crystal clear, for counsel for the defense was present and interrogated the witness; but whether that was so or not was primarily a question for the tribunal which heard the case to determine. It obviously found the deposition to have been taken upon proper notice. Indeed, at one juncture the President of the court either wittingly or unwittingly took the whole matter out of any possible pale, so far as this court is concerned, when he interrupted the proceedings to say:

"I direct this question to the defense counsel. Were you given an opportunity to cross-examine this witness [Rhinefield]?" Receiving an affirmative answer he then said—although the deposition had been received in evidence—"Do you have any objection to the admission of this document [deposition]?" In answer to this question counsel for the Defense responded: "No Sir, no objection." (R. 70.)

■ The argument of counsel in the present cases, that the use of the deposition violated Army Regulations in that it was an admission by one of the conspirators made subsequent to the last proven act by members of the conspiracy and after the conspirator had been apprehended, is not without persuasiveness. However this court cannot release petitioners merely because improper evidence may have been received. The evidence, however, was not as counsel contends, "extrajudicial statements by one of two or more jointly accused." It was a judicial statement made by one of the participants who, for reasons appearing to him to be sufficient, had chosen to "turn state's evidence" and testify against his former associates.

■ The alleged "ineptness" or "inefficiency" of counsel representing petitioners at the trial before the court-martial cannot serve as the basis for releasing petitioners in these cases. It is a matter of common knowledge, recognized, no doubt, by the Congress, that lawyers or persons trained in the law, are not always readily available to defend persons in the military or naval service who may be accused of crime. Recognizing, however, that the assistance of counsel is desirable, Congress provided in Article 11, Title 10 U.S.C.A. § 1482, that "the authority appointing the court shall appoint * * * a defense counsel." This should be read in conjunction with Article of War 17, Title 10 U.S. C.A. § 1488, which gives the accused the right "to be represented in his defense before the court by counsel of his own selection if he so provides, or military if such counsel be reasonably available, otherwise by the defense counsel duly appointed for the court pursuant to Article 11." The wisdom of the provisions is not a matter for determination by this court; but it agrees with counsel for the respondent that the Congress probably knew "the appointing authority, above all persons, would be best informed as to the qualifications of court members and of court personnel," which was probably the genesis of confiding to him the selection of proper officers to perform those important functions.

■ But regardless of what has been suggested or said, this court shares the view stated by the Circuit Court of appeals for the Ninth Circuit in Romero v. Squier, 133 F.2d 528, 531, 532 that an Army officer, admitted by a court-martial to practice the arts of a military defense, need not also be admitted to practice by some civil court and, when chosen by the litigant and accepted by the court-martial "to prosecute or defend litigation there, is the same kind of officer at the bar of that court as is one entitled to practice at the bar of any other court." Moreover, the court record imports absolute verity, Thomas v. Hunter, 10 Cir., 153 F.2d 834; and it shows that these petitioners voluntarily elected to have Lt. Stout defend them. They were therefore bound by his acts and agreements, however inept, since no fraud, collusion or corruption by him has either been alleged or proved. Cf. Altmayer v. Sanford, 5 Cir., 148 F.2d 161; Diggs v. Welch, 80 U.S. App.D.C. 5, 148 F. 2d 667, 670. Whether he did, or failed to do, something which petitioners and learned counsel presently representing them think was improper or unwise is beside the point. As Judge Murrah of this (the Tenth) Circuit recently said, speaking for the court in Moss v. Hunter, 167 F.2d 683, 684, certiorari denied June 21, 1948, 334 U.S. 860, 68 S.Ct. 1519, 92 L.Ed. 1780:

" * * * one who appears before the court with counsel employed for his defense is not deprived of his constitutional

right to the assistance of counsel merely because in retrospection he concludes that such representation did not meet his standards of effectiveness (citing cases)."

Learned counsel for the respondent suggest that one in the military or naval service may not be entitled "to have the assistance of counsel for his defense," as specified in the Sixth Amendment, but must rely exclusively upon the Articles of War. Ruling upon the question posed is not necessary in the instant proceedings and it is passed.

In docket No. 1140 H.C. (Hayes v. Hunter) the respondent, after the petitioner had completed the presentation of his evidence, moved for a dismissal under Rule 41(b), Federal Rules of Civil Procedure, 28 U.S. C.A., on the ground that upon the facts and the law the petitioner had shown no right to relief. The court is of the opinion and now holds that the motion should be sustained. In Docket No. 1223 H.C. (Frazier v. Hunter) the court holds that the petitioner has failed to sustain his burden of proving that he is illegally restrained and detained by the respondent warden. In each case, therefore, order is being entered discharging the writ of habeas corpus and remanding the petitioner to the custody of the respondent.