**DUVAL v. HUMPHREY, Warden.**

No. 231.

United States District Court
M. D. Pennsylvania.

April 13, 1949.

458

William L. Showers, of Lewisburg, Pa., and Oscar W. B. Reed, of Washington, D. C., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Lt. Col. Nicholas R. Voorhis and Lt. Col. Donald P. MacArthur, Office of Judge Advocate General, both of Washington, D. C., for respondent.

FOLLMER, District Judge.

Petitioner, tried jointly with one "Fuller", was convicted by a General Court-Martial on a charge of rape. In this habeas corpus proceeding he has by his petition, and first and second amendments to the petition,[1] sought to raise nearly every conceivable issue which has been before the courts in this type of case, as well as new ones suggested thereby. Most serious was the somewhat startling allegation that Major Lohse, the law member of the court, stepped down from the bench on the first day of the trial and, in the absence of the Trial Judge Advocate, took his position at the prosecution table and conducted the prosecution, again assuming his position on the bench, as law member of the court, during the second day of the trial.[2] Because

---

[1] Plus this additional barrage, Brief, Supplemental Brief, Final Supplemental Brief, Addenda to Supplemental Briefs, and as a super final apologia to all the foregoing a further Brief in the form of a letter.

[2] Transcript of Testimony of first hearing, Pages 16, 17, and 18.

"By the Court:—

"Q. You say he (Lohse) was a member of the Court?

"By the Petitioner:—

"A. That is right.

"Q. Just exactly what did he do the first day of the trial? A. The first day he wasn't a member of the Court.

"Q. I want to know what he did; I don't want your conclusions as to what he did. A. He was called Trial Judge Advocate by the other members.

"Q. What did he do in connection with the trial? Where did he sit? A. By the prosecuting attorney.

"Q. What did he do? A. He would ask questions.

"Q. The members of the Court; how many were sitting on the Court? A.

There were six the first day and seven the second day.

"Q. Who made the seventh the second day? A. The fellow who was sitting beside the prosecuting attorney.

"Q. Is that this man Lohse? A. Yes sir.

"Q. You heard what the Colonel said about the record showing that the Assistant Trial Judge Advocate Gordon— A. That was the prosecuting attorney.

"Q. Did this man Lohse sit beside Gordon? A. Yes sir, at the table where Gordon was.

"Q. Who asked the questions? A. The prosecuting attorney.

"Q. Who was he? A. Gordon.

"Q. What did Lohse do? A. He was the Judge Advocate.

"Q. Yes, but what did he do? A. He asked questions, occasionally, but the Court asked most of the questions.

"Q. I am particularly interested in this man who you say the first day sat beside Gordon, the Assistant Trial Judge Advocate, and the second day he ascended the Bench. Is that right? A. Yes sir.

of the seriousness of this allegation it necessitated a second hearing, and involved locating and calling the Assistant Trial Judge Advocate and four members of the court (including the law member) from distant points to testify.[3]

After listening to the credible testimony of this array of reputable and substantial witnesses there can be no doubt that there is not a word of truth in petitioner's testimony. It is my opinion that his statements as to what occurred at the trial constitute deliberate perjury. This is confirmed by the Court-Martial Record insofar as it shows what transpired.[4] I find as facts that the law member of the court occupied his proper position on the bench as a member of the court throughout the trial on both the first and second days thereof. At no time did he step down, sit with the prosecution or prosecute the case. The case was prosecuted on the first day of the trial by the duly appointed Assistant Trial Judge Advocate.

During the trial questions were asked from the bench by the members of the court, including the law member. This was proper.[5] An examination of the trial record is convincing that the court protected the petitioner's rights throughout. The court, including the law member, cautioned witnesses on improper testimony,[6] struck improper answers without waiting for an objection,[7] and the court continued to a second day of trial in order to call four additional witnesses who had not been called by either the prosecution or the defense.[8]

---

"Q. Tell me—I want to know just what this man Lohse did? A. He asked questions.

"Q. I thought you said Gordon asked the questions? A. He did, and the Court members asked questions; they all asked questions; there were seven of them the second day and six on the first day.

"By Mr. Showers:—

"Q. It is not clear to me. I would like to know how they sat? A. We were in a German Court Room.

"Q. Meaning like this? A. In a small Court Room, it had a small bench similar to this.

"By the Court:—

"Q. Did these six men who were the Judges sit for all this? A. They certainly did.

"Q. Some on the bench you said? A. All but that one.

"Q. And Gordon sat at a small table? A. Yes sir.

"Q. And Lohse sat beside him the first day? A. That is right.

"Q. You say Gordon asked questions and Lohse asked questions? A. Yes sir.

"Q. On the second day did he ask questions and sit beside Gordon? A. No sir.

"Q. What became of Lohse? A. He stayed up on the Bench with the other six making the seventh."

[3] The law member of the court came from Arizona, where he is now a practicing attorney. One member, still in the service and now attached to the War College, came from Washington, D. C. A third member, now a business executive in civilian life, came from his home in Indiana. A fourth member came from South Carolina, where he is now an Assistant Professor of Military Science and Practice. The Assistant Trial Judge Advocate appeared from Maryland, where he is now a practicing attorney. At the first hearing, because of other allegations of petitioner, the Pre-Trial Investigator came from Hawaii to testify. Petitioner's former Company Commander also testified.

[4] e. g. Respondent's Exhibit No. 1, Court-Martial Record, Pages 86, 91, and 97.

[5] A Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943), Paragraph 121 b., Pages 127 and 128.

[6] e. g. Respondent's Exhibit No. 1, Court-Martial Record, Pages 91 and 100.

[7] e. g. Respondent's Exhibit No. 1, Court-Martial Record, Pages 101, 117, and 126.

[8] A Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943), Paragraph 75, Page 58, provides, inter alia, "The court is not obliged to content itself with the evidence adduced by the parties. Where such evidence appears to be insufficient for a proper determination of any issue or matter before it, the court may and ordinarily should, take appropriate action with a view to obtaining such available additional evidence as is necessary or advisable for such determination. The court may, for instance, require the trial judge advocate to recall a witness, to summon new witnesses, or to make investigation or inquiry along certain lines with a view to discovering and producing additional evidence."

The petitioner, whose credibility stands at low ebb, testified that he requested his counsel to check the chastity of the victim. I find as a fact that no request was made of the Pre-trial Investigator. No attack on the victim's chastity was attempted during the trial. He does not even now contend or produce any proof casting any doubt upon the victim's chastity. His counsel, who ably defended him, undoubtedly knew the answer and wisely refrained from raising this issue. The trial court, as we have indicated, solicitous of the rights of the defendants, on its own initiative called additional witnesses on any matter requiring clarification. After listening to all parties and with the benefit of being able to observe them, it evidently had no doubt on this particular issue or the credibility of the victim's testimony.[9]

The verdict was fully justified by the evidence, but in any event we are not here concerned with the guilt or innocence of the accused. As was pointed out in In Re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 344, 90 L.Ed. 499, "If the military tribunals have lawful authority to hear, decide and condemn, their action is not subject to judicial review merely because they have made a wrong decision on disputed facts. Correction of their errors of decision is not for the courts but for the military authorities which are alone authorized to review their decisions."

Petitioner alleges that counsel were not attorneys. They were commissioned officers and this contention is without merit.[10]

It is alleged in the petition that petitioner and his co-accused made longhand signed statements in defense and mitigation, and that neither of these statements were introduced in evidence at the trial. The petition then advances the unique proposition that this deprived the accused of due process of law, and that "It was for the court to consider these statements in considering the element of 'reasonable doubt.'" In the brief however it is alleged that "Both petitioner and Fuller were induced in making the aforesaid statements by reason of false promises * * *."[11] In the same paragraph appears "These long-hand statements do not appear in the record and there is nothing in the record to indicate that the general court-martial board had any knowledge whatsoever regarding said statements."

There have been frequent attempts to inject into habeas corpus proceedings the allegation that an involuntary statement was admitted into evidence. The present allegations however constitute a paradox. I cut the Gordian knot by finding that the statements were voluntary, that they were not introduced into evidence,[12] and that petitioner personally testified at the trial to the same effect as the statements. I conclude as a matter of law that not having been introduced into evidence, it is immaterial whether or not the statements were voluntary and furthermore, that the question of the admissibility of such evidence is for the trial court and not a proper subject of habeas corpus.[13]

The Pre-trial Investigator's report contains the usual statement where nothing has developed to raise doubts as to the sanity of accused,[14] and there is attached to his report a psychiatric report by Captain Edwin A. Lawson, M. C., which indicated that there was no basis for questioning the sanity of the accused. Nothing occurred at the trial or during the entire

---

Similar procedure is recognized in the civil courts. Johnson v. United States, 333 U.S. 46, 54, 68 S.Ct. 391.

[9] There was other testimony bearing on the question of consent which would have justified the verdict. There was significant testimony by a neighbor as to victim's conduct and remarks immediately after the occurrence (Respondent's Exhibit No. 1, Court-Martial Record, Page 122) when she hid at such neighbor's house for the balance of the night.

[10] Adams v. Hiatt, D.C.M.D.Pa., 79 F. Supp. 433; Hayes and Frazier v. Hunter, D.C.Kan., 83 F.Supp. 940.

[11] Petitioner also so testified.

[12] Petitioner cites authorities having reference to the right of a defendant to present an unsworn statement in lieu of testifying under oath (A Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943), Page 61, Paragraph 76) and are clearly not in point.

[13] Miller v. Hiatt, 3 Cir., 141 F.2d 690; see also Upshaw v. United States, 335 U. S. 410, 69 S.Ct. 170.

[14] Respondent's Exhibit No. 1, Court-Martial Record (Report of Investigation of Charges), Page 38.

proceedings to create any doubt as to his sanity, nor was any such defense raised.[15] He did not contend then, nor does he now contend, that he was not sane. Petitioner's counsel, however, contends that there was a denial of due process because such psychiatric report was not offered in evidence and because petitioner was not afforded an opportunity to cross-examine the psychiatrist. This is, of course, absurd.[16] Nor is there anything here which could be considered under the doctrine of suppression of evidence.[17]

Petitioner contends that the proceedings are void because the law member of the court authenticated the partial record for the first day and the entire record when completed "in lieu of the trial judge advocate because of his absence", and further that this also proves that he was acting as Trial Judge Advocate.[18] This proves nothing except that the Trial Judge Advocate was absent the first day and was not available when the record was completed, as is evidenced by both the record and the testimony here. Such authentication was proper.[19]

Incompetency of counsel is also alleged. Petitioner and Fuller indicated at the commencement of the trial that they desired to be represented by the duly appointed defense counsel.[20] Petitioner at no time complained to the trial court concerning counsel.[21] No proof was offered to the contrary, and I find as a fact that there was no abuse of discretion by the appointing authorities in the selection of defense counsel.[22] After an examination of the trial record I further find as a fact that counsel did ably represent him. The burden is upon the petitioner to prove his allegations by a preponderance of the evidence,[23] and he has produced nothing except retrospective conjecture. This falls far short of the proof required.[24]

Petitioner contends that jurisdiction was lost because the charges were not forwarded within eight days of his arrest and also served upon him and because he was not given an immediate trial. The offense occurred around midnight or early morning of May 16, 1945. The victim, a partially paralyzed cripple, appeared at headquarters that same morning, with bruises on the neck and arm, and produced letters and a helmet lining found on the premises after the commission of the offense.[25] Captain Lindsay, the Commanding Officer, preferred the charges; Captain Avis, Pre-trial Investigator arrived; the

[15] The procedure in such cases is set forth in A Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943), Page 49, Paragraph 63.

[16] Cases cited by counsel refer not to the examination but to testimony before the court, where such issue is actually raised.

[17] Harris v. Sanford, D.C.N.D.Ga., 78 F.Supp. 963.

[18] The complete record was authenticated by the President of the court, by the defense counsel, and thereafter by the law member of the court as "A member in lieu of the trial judge advocate because of his absence."

[19] This was in accordance with the Manual for Courts-Martial, U. S. Army, 1928 (Corrected to April 20, 1943), (Appendix 6, Page 268) for authentication in the absence of the usual authenticating officer.

[20] Respondent's Exhibit No. 1, Court-Martial Record, Page 70 (top).

[21] Tompsett v. State of Ohio, 6 Cir., 146 F.2d 95, certiorari denied 324 U.S. 869, 65 S.Ct. 916, 89 L.Ed. 1424.

[22] United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976; United States ex rel. Mitchell v. Thompson, D.C.S.D. N.Y., 56 F.Supp. 683, affirmed 2 Cir., 137 F.2d 1006, adhered to 2 Cir., 138 F. 2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083, rehearing denied 322 U.S. 768, 64 S.Ct. 1052, 88 L. Ed. 1594; United States v. Gutterman, 2 Cir., 147 F.2d 540, 157 A.L.R. 1221.

[23] Christakos v. Hunter, 10 Cir., 161 F. 2d 692, certiorari denied 332 U.S. 801, 68 S.Ct. 92; Maye v. Pescor, 8 Cir., 162 F.2d 641.

[24] Moss v. Hunter, 10 Cir., 167 F.2d 683; Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002; Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857 (Para. 49); Ex parte Steele, D.C. M.D.Pa., 79 F.Supp. 428, 431; United States ex rel. Thompson v. Nierstheimer, 7 Cir., 166 F.2d 87; United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976; Hayes and Frazier v. Hunter, D.C.Kan., 83 F.Supp. 940.

[25] The letters were from petitioner's wife, addressed to him, and the helmet lining (by the number therein) was identified as Fuller's.

accused were identified, and part of the pre-trial investigation was made the same morning. I also find as a fact that the petitioner was at that time fully informed of the nature of the charges against him. The pre-trial investigation was completed by Captain Avis on May 24, 1945, and the report forwarded through three commands between May 24, and May 31, 1945, to the Judge Advocate who made his report on June 2, 1945. The Commanding General referred the case for trial on June 4, 1945. The petitioner was served with the formal charges June 6, 1945. The trial began on June 13, 1945. In the light of the situation at this time in the European Theatre of Operations, the distances at which some witnesses had to be interviewed, the channels through which documents had to pass, and all the other circumstances of the case, the time element is remarkably short and actually commendable. The date for trial was set after defense counsel indicated they were ready to try the case.[26] Moreover Article of War 70, 10 U.S.C.A. § 1542, as to these provisions contains the words "if practicable", is not mandatory and not a jurisdictional prerequisite.[27] There is certainly nothing before us from which we could conclude that petitioner was prejudiced in his defense by any delay.[28]

■■■ A second amendment to the petition was filed shortly before the hearing, which was predicated upon a reply letter from the War Department, received by counsel over five months before the original petition was filed, furnishing names and addresses of possible witnesses. The allegation is "It is petitioner's belief, based upon the aforesaid official communication that Major Lawson and Captain Lawson are one and the same persons and that it was illegal for said Captain—Major Lawson, aforesaid to attempt passing upon the mental responsibility of petitioner while at the same time acting as a member of the said general court-martial board, as reported by the Department of the Army in the form

and manner as aforesaid." The letter uses the words "The latest addresses for the officers who served as members of the courts martial are as follows: * * *." The construction sought to be placed thereon is "members of the Court" rather than officers participating in this particular court-martial proceeding, and one name is picked out of the general list for the foregoing allegation. To anyone as familiar as counsel[29] for petitioner with the facts in the case, it must have been apparent by even a cursory examination that a list of fourteen names with reference to a trial with a court composed of seven members and with other names in such list being unquestionably those of the Trial Judge Advocate, Assistant Trial Judge Advocate, Defense Counsel, Assistant Defense Counsel, Accuser, Investigating Officer, as well as the Psychiatrist, did not justify such a belief, nor did the Court-Martial Record warrant such a conclusion. It was also apparent that the Psychiatrist, Captain Lawson in 1945, might be called Major Lawson in 1948. With ample time and full knowledge of the whereabouts of the various parties, no statements or depositions of witnesses were obtained to justify such a conjecture, nor was there any basis for it in the Court-Martial Record. The petitioner offered nothing further to bear out his alleged belief. I accordingly find no merit whatsoever in petitioner's contention. This is such a flagrant grasping at straws that it calls for comment. The writ of habeas corpus is a high writ for which this Court has a deep regard, but by the same token, it also follows that it should not be wantonly abused and the time of the Court deliberately wasted.

■■■ It is contended that the introduction in evidence of letters found on the premises constituted prejudicial error for the reason that they were confidential communications between husband and wife. Their sole purpose was to identify the accused. They were clearly admissible. Fur-

[26] Transcript of Testimony of second hearing, Pages 6 and 7.

[27] Bigrow v. Hiatt, D.C.M.D.Pa., 70 F. Supp. 826, affirmed 3 Cir., 168 F.2d 932.

[28] Cf. Durant v. Hiatt, D.C.N.D.Ga., 81 F.Supp. 948.

[29] What is said does not refer to local counsel who merely participated at the trial on the basis of a case prepared by the "Counsel-in-chief."

thermore, this is a question of the correctness of a court's ruling on the admissibility of evidence, and not the subject of a habeas corpus proceeding.[30]

Finally, the usual allegation is made that there was no thorough and impartial investigation under Article of War 70. Two of the reasons as to notice and service of charges have already been discussed. The remaining reason is that he was not confronted with the witnesses or afforded an opportunity to cross-examine. The victim having reported the crime, the Pre-trial Investigator arrived the same morning (May 16), and preliminary to an investigation as to Duval and Fuller, arranged for the victim to look out of a window at troop headquarters while a group of soldiers, including these two men, were brought before the window. None of these soldiers were handcuffed. The victim immediately indicated these two men. Petitioner testified that the only time he saw Maria Schaeffer (the victim) during the investigation, up to the time of her appearance in court, was through the window at the time of the identification.[31] He further claims that he was not shown her statement and given no opportunity to cross-examine her; that May 16, was the only time the Pre-trial Investigator talked to him; that he was not shown the statements of the civilian doctor and the medical officer who examined the victim, nor the statement of 1st Sergeant Kennedy. On the basis of the record, supplemented by the fair and credible testimony of the Commanding Officer and the Pre-trial Investigator, I find that petitioner was fully advised as to his rights (including those of confrontation and examination of witnesses), and furthermore because of his participation he was fully aware of his rights; that the Pre-trial Investigator arranged a meeting on the morning of May 16, 1945, at which, among others, there were present the Commanding Officer, Maria Schaeffer, Sergeant Kennedy, the accused (Duval and Fuller); that during this meeting the accused claimed as an alibi that they were on guard duty at the time; that the Pre-trial Investigator, considering him a witness for the accused, called the Corporal of the guard into the meeting whereupon their statements not being sustained they dropped this alibi and admitted having been on the premises; that if the alibi had been sustained, the Investigator would have discontinued the investigation immediately;[32] that at this meeting the witnesses told their stories and a full discussion was had in which they participated and asked questions and cross-examined witnesses, Fuller asking most of the questions since Duval became sullen and uncooperative after the alibi involved in his denial of having been at the victim's premises had been disproved; that Duval was given an opportunity to have any witness he desired;[33] that the Pre-trial Investigator on a later date showed to petitioner all the statements of witnesses, including those of the two doctors who subsequently examined the victim, and fully aware of his right to do so, and being given an opportunity to do so, did not indicate a desire to cross-examine these witnesses, nor any others, and did not ask for any other witnesses; that the medical testimony was with reference to uncontroverted matters and there was other corroborating testimony as to the bruises. I accordingly find, that the pre-trial investigation was fair, thorough, and impartial; that there was a substantial as well as literal compliance with Article of War 70. I find no errors which were prejudicial to petitioner, or of such a nature as to constitute a denial of due process.

From a careful reading of the trial record, I am convinced that the trial court was not only fair and impartial, but exceptionally careful in its protection of the rights of the accused. I find nothing concerning which this Court in habeas corpus is justified in interfering.[34] The only possible basis for finding otherwise as to any

---

[30] In re Yamashita, supra.
[31] Transcript of Testimony of first hearing, Pages 27 and 28.
[32] Transcript of Testimony of first hearing, Page 45.
[33] Transcript of Testimony of first hearing, Pages 45 and 46.

[34] Becker v. Webster, 2 Cir., 171 F. 2d 762; Durant v. Hiatt, supra; Henry v. Hodges, 2 Cir., 171 F.2d 401; Richardson v. Zuppann, D.C.M.D.Pa., 81 F.Supp. 809.

of the facts here involved would be predicated solely on petitioner's oral testimony, and after listening to this petitioner's glib manipulation of the facts, such oral testimony with its dubious credibility does not sustain his burden of proof, as against the evidence to the contrary, both by records and by witnesses whose credibility and fairness were manifest at these hearings.

The petition for writ of habeas corpus is denied and the rule to show cause dismissed.[35]

---

[35] A motion to join the Attorney General as a party respondent was previously denied and a subsequent motion to join the United States as a party respondent has also been denied prior to the entry of the present decree.