**James Wm. SMITH, Appellant,**

v.

**Robert S. McNAMARA, U. S. Secretary of Defense, Appellee.**

**Gilbert Esco ANGLE, Appellant,**

v.

**Robert S. McNAMARA, U. S. Secretary of Defense, Appellee.**

Nos. 9761, 9754.

United States Court of Appeals
Tenth Circuit.

June 12, 1968.

William M. Allison, Denver, Colo. (each petitioner pro se on separate briefs) for appellants.

Benjamin E. Franklin, Topeka, Kan. (Newell A. George, Topeka, Kan., with him on brief) for appellee.

Before MURRAH, Chief Judge, JONES,* Court of Claims, and BREIT-ENSTEIN, Circuit Judge.

MURRAH, Chief Judge.

By separate petitions to the District Court of Kansas, Smith and Angle sought in effect to mandamus the Secretary of Defense to remove from their records dishonorable discharges resulting from court martial convictions in 1945 and 1948, respectively. The salient contention in both petitions seems to be that the court martials were void because petitioners were denied their constitutional right to counsel. On the authority of Ashe v. McNamara, 1 Cir., 355 F.2d 277, Judge Stanley entertained jurisdiction under 28 U.S.C. § 1361 to judicially review administrative orders of the Secretary acting through the Army Board for Correction of Military Records pursuant to 10 U.S.C. § 1552.[1] He denied the writ

---

* Honorable Marvin Jones, sitting by designation.

1. Section 1552 pertinently provides that the "Secretary of a military department,

of mandamus, holding that the court martials were not constitutionally void and the Secretary was not legally required to grant the honorable discharges.

■ For the first time on appeal the Secretary suggests the failure of jurisdiction in the Angle case for want of proper service. Public law 87–748 (1962), 28 U.S.C. §§ 1361, 1391(e), which confers jurisdiction on the District Courts to entertain actions in the nature of mandamus against government officers [2] provides for service of summons and complaint in accordance with the Federal Rules of Civil Procedure "except that delivery of the summons and complaint to [such] officer * * * may be made by certified mail [outside] the district in which the action is brought." 28 U.S.C. § 1391(e). Rule 4(d) (4) and (5), F.R.Civ.P., significantly provides that in suits against officers of the United States a copy of the summons and complaint must be delivered to the officer and to the United States, i. e. the United States Attorney and the Attorney General. See Messenger v. United States, 2 Cir., 231 F.2d 328; Wallach v. Cannon, 8 Cir., 357 F.2d 557. Angle admits that no such delivery was made on either the officer sued, i. e. the Secretary of Defense, or on the United States as provided in the rules. Nor did the Secretary or the United States waive the lack of service by pleading or appearance. It follows that the court never acquired jurisdiction in Angle's case and the action must be dismissed on that ground.

■ A different situation obtains with regard to Smith where the Secretary entered his appearance in response to an order to show cause. It now seems to be conceded that by such appearance the lack of proper service was waived, and we proceed to consider the Smith case on its merits.

Smith was convicted in 1945 of the crimes of Absence Without Leave and Robbery in violation of Articles of War 61 and 93 and sentenced to a term of imprisonment at hard labor, forfeiture of pay and allowances and dishonorable discharge. At trial he was represented by a member of the Military Police admittedly not trained in the law; the prosecuting officer was a member of the Transportation Corps and there is no record indication that he was legally trained. The convening authority approved the findings of guilt but reduced the term of confinement and suspended the dishonorable discharge. The record of trial was then reviewed by the office of the Judge Advocate General and found legally sufficient to support the sentence. Smith escaped from detention in the Phillipines and was recaptured five years later in the United States, at which time he was returned to confinement and suspension of the dishonorable discharge was revoked. Through legally trained, non-military counsel, Smith petitioned the office of the Judge Advocate General for a new trial raising some of the issues urged here, but not complaining of lack of counsel. The petition was denied but the term of imprisonment was subsequently reduced. On completion of the sentence, he petitioned the Army Board three times to grant him an honorable discharge and payment of all sums previously withheld; his requests were denied without a hearing.[3] He brought the present action by petition pro se while in the custody of the State of Kansas on an unrelated conviction. The record before the court included one page of

under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice."

2. See Prairie Band of Pottawatomie Tribe of Indians v. Udall, 10 Cir., 355 F.2d 364.

3. Unlike the petitioner in Ashe, supra, Smith did not seek review of the Board's action by the U.S. Court of Military Appeals, but the Secretary has not suggested that court had jurisdiction to review these administrative decisions.

the transcript of testimony at the court martial and numerous documents summarizing the proceedings including both the brief and decision on the petition for new trial. In denying relief the trial court was of the opinion that all of Smith's asserted claims had been fully investigated on the petition for new trial and found meritless by the military authorities.

The Secretary's initial contention on appeal is that, notwithstanding Ashe, the District Court had no jurisdiction to review the court martial and consequently the denial of the writ of mandamus should have been made to rest on that ground alone. The Secretary invokes the finality provisions of two statutes: (1) 10 U.S.C. § 876 which makes the decisions of court martials "final" and "binding upon all * * * courts"; and (2) 10 U.S.C. § 1552 which makes corrections of military records thereunder by the Secretary "final and conclusive on all officers of the United States". It is sufficient to say that the contention with respect to Section 1552 was squarely met and conclusively answered in Ashe, supra, where, upon painstaking review of the legislative history, the First Circuit was of the opinion that the statute "was not intended to preclude any otherwise proper judicial review of departmental action [upon a petition] to change the type of [a] discharge." Id. 355 F.2d 281. As to Section 876, it is well settled that the section "do[es] not deprive civil courts [of jurisdiction] of habeas corpus jurisdiction in proper cases." Easley v. Hunter, 10 Cir., 209 F.2d 483; and see Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508; Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146. And, notwithstanding the finality language of section 876, the Court of Claims has continuously entertained suits by military personnel claiming that their court martial convictions were void. Augenblick v. United States, 377 F.2d 586, 180 Ct.Cl. 131; and see Shaw v. United States, 357 F.2d 949, 953, 174 Ct.Cl. 899 and cases cited in footnote 4. The court in Augenblick, supra,

377 F.2d 592, reasoned that "To deny collateral attack to one not in confinement—the consequence of saying that habeas corpus is the only remedy—would be to deny the possibility of review by a constitutional court, and ultimately by the Supreme Court, of the constitutional claims of servicemen * * * who have not been sentenced to jail or who have been released." For like reasons we conclude that the trial court was vested with jurisdiction to review by mandamus, as in habeas corpus, the "final" court martial decision even though Smith had completed the term of imprisonment imposed as a result of that conviction.

It follows that where the "conviction was the product of court-martial procedure so fundamentally unfair that, upon a proper petition, a district court at the place of incarceration would have been obliged to grant * * * a writ of habeas corpus", it would be "as much the duty of the Secretary and the Correction Board, as it would have been of a court * * *, to treat as void a sentence thus unconstitutionally imposed" and "the matter of changing the type of discharge [would therefore involve] a plain duty to grant relief, enforceable by an action in the nature of mandamus under section 1361 of title 28." Ashe, supra, 355 F.2d 280, 282. This brings us squarely and inevitably to the constitutional validity of Smith's court martial and particularly to the question whether the representation afforded him there complied with the fundamental right of due process, i. e. a full and fair hearing where liberty is at stake.

In Kennedy v. Commandant, 10 Cir., 377 F.2d 339, we were confronted with the claim of denial of the constitutional right to counsel in a special court martial under the Uniform Code of Military Justice, which provides that both trial and defense counsel in a general court martial must be legally trained and that prosecution and defense counsel in a special court martial need only be of coequal training. See Article 27, 10 U.S.C. § 827. In the circumstances of that case

we found it "unnecessary and inappropriate to resolve the question whether the right to counsel provisions of the Sixth Amendment as recently vitalized in federal prosecutions and made applicable to state prosecutions * * * should now be made strictly applicable to military prosecutions." But, we were certain that, in any event the spirit of the Sixth Amendment right to counsel pervaded the due process rights of military justice to the end that an accused person was entitled to the guiding hand of one whose competence was comparable to that of his adversary. We were satisfied that such requirement "fully compl[ies] with the right of counsel requirements of the Sixth Amendment." Kennedy, supra, 343.

■ The instant case arose before the advent of the Uniform Code of Military Justice, but the applicable Articles of War provided that: "Accused shall have the right to be represented * * * by counsel of his own selection * * * [or by appointed counsel]". Article 17. Case law of the era interpreted this provision to mean that a commissioned officer admitted to practice before court martials was "a competent attorney within the purview of the Sixth Amendment." Altmayer v. Sanford, 5 Cir., 148 F.2d 161, 162; and see Romero v. Squier, 9 Cir., 133 F.2d 528; Duval v. Humphrey, D.C., 83 F.Supp. 457, 460; Hayes v. Hunter, D.C., 83 F.Supp. 940, 944. By inference we are asked to overrule this line of cases in light of the "vitalized" Sixth Amendment. We do not choose to do so.

"It would be fallacious to assume that a service member appears before a court martial in the identical position as a defendant before a civilian court. From Powell v. [State of] Alabama, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158] * * *, down to and including Gideon v. Wainright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed. 2d 799] * * *, there persists the plight of one charged with crime before civilian courts, who appears alone and without counsel because he is indigent. * * * [N]o serviceman appears before a court martial alone." Judge Kilday in United States v. Culp, 14 U.S. C.M.A. 199, 202. While the qualifications of counsel under the applicable Articles of War were not as stringent as the requirements of the Military Code, they did provide for counsel and Smith received it. We are not persuaded that Smith's representation by non-legally trained counsel violated his right to counsel when the prosecuting officer was apparently also untrained in the law. This is particularly so in as much as Smith was represented by legally trained counsel on his petition for new trial and all issues relevant to the conduct of the court martial were then raised, considered and decided. Our situation is quite different from Ashe, supra, where the contradictory defenses of the two accused servicemen defended by a single attorney made it per se impossible for him to function as counsel for both.

■ Smith also complains (1) that a reduction in rank from private first class to private was punishment for his alleged absence without leave and that as such he was put in double jeopardy; (2) that he was convicted on the uncorroborated testimony of an accomplice; (3) that the reading of the charge sheet in open court amounted to the introduction of hearsay evidence. All these issues were raised and answered on the petition for new trial and have been dealt with "fully and fairly" by the military and we will not interfere with their judgment. Burns v. Wilson, supra; Kennedy v. Commandant, supra, 377 F.2d 342, and cases cited.

The motion for writ of mandamus was properly denied.